[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14497
Non-Argument Calendar
_____

D.C. Docket No. 6:11-cv-02040-ACC-DAB

WILLIAM ARSIS,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 18, 2014)

Before TJOFLAT, PRYOR, and JORDAN, Circuit Judges.

PER CURIAM:

William Arsis filed a petition for habeas corpus relief in federal court

pursuant to 28 U.S.C. § 2254, alleging that the state court violated his Sixth and

Fourteenth Amendment rights by failing to appoint counsel for a discussion relating to his competency during trial. The district court denied the petition, and we granted Mr. Arsis a certificate of appealability on this claim. We now affirm.

## I

Mr. Arsis, a Florida prisoner, is serving a total sentence of life imprisonment following jury convictions for burglary, aggravated battery, false imprisonment, kidnapping a child, grand theft of a motor vehicle, and theft.

On March 4, 2005, the state trial court determined that Mr. Arsis was incompetent to stand trial, and Mr. Arsis was committed to the Department of Children and Family Services ("DCF") to be placed in a mental health facility. On August 14, 2006, the trial court found that Mr. Arsis' competency had been restored. Two weeks later, the court granted Mr. Arsis' motion to proceed *pro se*.

On the first day of trial, Mr. Arsis represented himself and made cogent objections. *See* Ex. I at 145-48, 167, 187–88.[1] He also presented an opening statement to the jury and made challenges to the court's jurisdiction. *See id.* at 174-82, 200-01. After a few hours, Mr. Arsis agreed to allow the court to appoint his standby counsel to represent him, but he then quickly recanted and decided to again represent himself. Mr. Arsis continued to make objections during the state's

---

[1]    Unless otherwise noted, citations to the record refer to the appendices filed with the respondents' brief.

case, cross-examined the state's witnesses, and renewed his jurisdictional challenges until the day's end. *See id.* at 207-82.

On the second day of trial, Mr. Arsis began the day by, for the first time, raising the issue of his competency. He explained to the trial court that he was told in jail to request a competency hearing. The court asked whether he believed he was competent, and Mr. Arsis then presented the court with details about his belief that he was abducted by aliens when he was 13 and that a camera was installed in his eye as part of a larger conspiracy. The court reviewed Mr. Arsis' prior mental health records and determined that this information was not new and had been previously evaluated during the determination of his competency. At that point, the trial court did not press the issue of Mr. Arsis' competency and continued the trial—noting that the report referenced Mr. Arsis' history of exaggerating mental health symptoms. *Id.* at 299-300. A jury later convicted Mr. Arsis.

Upon a motion by conflict counsel, who was appointed after Mr. Arsis was convicted, the trial court again evaluated Mr. Arsis' competency before sentencing, and found him incompetent. Mr. Arsis was committed to DCF for another year until his competency was again restored. The court ultimately sentenced Mr. Arsis to life imprisonment plus forty years and sixty days.

On direct appeal, Mr. Arsis argued, among other things, that the trial court should have appointed counsel for him during the colloquy on the second day of

trial.    The Fifth District Court of Appeal upheld Mr. Arsis' convictions and sentence in a per curiam order.  *See Arsis v. State*, 22 So. 3d 559, 559 (Fla. 5th DCA 2009).  Mr. Arsis then unsuccessfully petitioned for a writ of habeas corpus and sought post-conviction relief in state court, alleging he received ineffective assistance of counsel.  *See* Ex. FF, JJ.

Mr. Arsis then petitioned for a writ of habeas corpus in federal court.  The district court denied his petition, ruling that the discussion between Mr. Arsis and the state court was not a competency hearing.  *See* D.E. 16 at 10.  The district court thus declined to reach the issue of whether such a hearing would be a "critical stage" of the prosecution so as to require appointment of counsel.  *See id.*  Mr. Arsis then appealed, and we granted a certificate of appealability to determine whether the trial court's discussion with Mr. Arsis about his competency on the second day of trial was a competency hearing, and, if so, whether the trial court erred when it failed to appoint counsel to represent Mr. Arsis for that hearing.

## II

We review *de novo* the denial of a petition for a writ of habeas corpus.  *See Ferguson v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 1315, 1330 (11th Cir. 2013).  The Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996 precludes federal courts from granting habeas relief on a claim already adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an

4

unreasonable application of clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d), or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* This review is "highly deferential." *Williams v. Allen*, 598 F.3d 778, 787 (11th Cir. 2010).

A state court decision violates § 2254(d)(1) if it applies a rule that contradicts Supreme Court precedent or arrives at a result that differs from such precedent when faced with materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002); *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010). A state court's decision is an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *see Brown v. Payton*, 544 U.S. 133, 141 (2005), or "if the state court either unreasonably extends a legal principle from this Court's precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," *Williams v. Taylor*, 529 U.S. 362, 406 (2000). Where, as here, a state court's summary decision is unaccompanied by an explanation, the burden on a habeas petitioner is to show that no reasonable basis existed for the state court to deny relief. *See Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 784 (2011).

5

This does not, however, permit a *de novo* review of the merits of a petitioner's claim.  *See Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1286 (11th Cir. 2012).  Rather, to demonstrate objective unreasonableness, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement . . . that [the state court's] arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court." *Id.*  (citations and quotation marks omitted).

## III

We conclude, as did the district court, that the trial court's discussion with Mr. Arsis did not amount to a competency hearing.  The trial court therefore did not err in not providing Mr. Arsis with counsel during that discussion.

The Due Process Clause of the Fourteenth Amendment prohibits requiring mentally incompetent defendants to stand trial.  *See Dusky v. United States*, 362 U.S. 402, 402 (1960).  *See also Fallada v. Dugger*, 819 F.2d 1564, 1568 (11th Cir. 1987) ("The test to determine whether a defendant is competent is whether he 'has sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'") (quoting *Dusky*, 362 U.S. at 402).

6

Courts have a duty to adequately ensure a defendant is not mentally incompetent during trial. *See Fallada*, 819 F.2d at 1568 (citing *Pate v. Robinson*, 383 U.S. 375, 384-86 (1966)). To comply with this duty and avoid a *Pate* violation, a court should consider three factors: "(1) evidence of the defendant's irrational behavior; (2) his demeanor at trial; and (3) any prior medical opinion on his competence to stand trial." *Id.* (citing *Drope v. Missouri*, 420 U.S. 162, 180 (1975). *See also Drope*, 420 U.S at 172 ("In [*Pate*], we held that the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent deprives him of his due process right to a fair trial.").

Review of the trial court transcript shows that the trial court's discussion with Mr. Arsis was not a competency hearing but rather an inquiry to determine whether a hearing was necessary at all. The court's questioning reasonably applied the *Drope* factors to determine the existence of *Pate* "bona fide doubt" because the court asked Mr. Arsis why he believed he was incompetent, compared his answers with prior medical opinions about his competency, and found that the information had already been weighed as a factor in determining that he was competent. In addition, the trial court had just observed his demeanor the day before as Mr. Arsis waived his right to counsel and represented himself, making timely and cogent objections, presenting an opening statement to the jury, and questioning the court's jurisdiction. Finally, the court had reason to consider the timing of Mr. Arsis'

competency concerns—which came after he received advice from others in jail to ask for a hearing and after he was visibly frustrated during trial the day before.[2]

Thus, despite Mr. Arsis raising the issue during trial and in light of prior competency hearings that had already taken place, the trial court justifiably found that no new competency concerns had arisen and that there was no bona fide doubt of competency meriting another hearing at that time. Had the court found such doubt, it could have then conducted a competency hearing and ordered another evaluation of Mr. Arsis, as was the case when Mr. Arsis was evaluated for competency prior to his sentencing.

## IV

The trial court appropriately questioned Mr. Arsis under *Drope* without initiating a full competency hearing.  As a result, there was no constitutional violation in failing to appoint counsel for Mr. Arsis during that colloquy.  *See, e.g.*, *Godinez v. Moran*, 509 U.S. 389, 399 (1993) (holding that the competency standard for waiving assistance of counsel is the same as competency to stand trial).

**AFFIRMED.**

---

[2] Mr. Arsis also contends that he was not competent to stand trial because he was not given his required medication.  *See* Appellant's Br. at 16.  Mr. Arsis, however, did not bring this matter to the court's attention during the discussion.  *See Fallada*, 819 F.2d at 1568 (explaining a *Drope* review "must focus on what the trial court did in light of what it then knew").